at all. Arguments not to exceed 13 minutes for plaintiff, 7 minutes for amicus, and 20 minutes for defendants. Ms. Marcino, for appellant. Good afternoon. Good afternoon. Thank you. May it please the court, my name is Erin Marcino and I have the honor and privilege to represent the appellants in this case. May I reserve two minutes for rebuttal? This case comes down to the absence of general applicability and neutrality because the state order exempts comparable activities that pose a similar or greater risk. The state's face mask orders create an anti-Churchillian paradox. We will fight COVID from the desks of the Resurrection School classroom, but we will not fight COVID from the tables of the restaurants. We will fight COVID from within the walls of the fourth grade classroom at Resurrection, but we will not fight COVID from the within the walls of the frat houses that have 19 college kids unrelated living together. The order is replete with exemptions. Today I'd like to address two main points. The first is that the state's order violates the free exercise clause under the Supreme Court's holdings in Brooklyn, Fulton, and this court's panel opinion in Monclova because the order is not generally applicable in failsafe scrutiny. Let me just ask a question rather prompt. Hasn't that order been drawn in the conditions that you're putting forth now, hasn't all that been changed by the actions of the government in Michigan? So that brings me to my next point, Judge Donnell, that the state has not shown under the mootness doctrine that it is absolutely clear that they will not reissue these orders. These orders can be reenacted at any time and they're also capable of repetition yet evading review. So they were abolished or rescinded effective in June of this year and has the state given any indication that they're inclined to reimpose such orders? Well they certainly can reimpose such orders at any time. That wasn't my question. I said have they given any indication that they would reimpose such orders? So what we're seeing is the kind of continued threat and kind of changing the goalposts that Camden and Roman Catholic Diocese discusses. How has Michigan changed the goalposts when they eliminated this in June and have not made any effort to reimpose it notwithstanding the Omicron situation? Or Delta. Yes, so MDHHS instead of issuing the order themselves because we have this ongoing case, has employed all of the county departments to issue these orders. Is that part of the record? That sort of cat's paw idea that you just referenced? It is. It's in the briefing and it's also public record. So you can go to any of the county websites and look at their emergency health orders. You can go to Ingham County, Ottawa County, Kent County, any of the counties and you'll see that in the first paragraph of their county orders they discuss how the Michigan Department of Health and Human Services has promulgated administrative rules that they rely on as authority for their county rules and then they also attach the exact same... Does their injunction rely on any of the county orders? No, it doesn't. Where in the amended complaint does it mention a county order? It's not in the amended complaint, it's in the first complaint. So it's first complaint, but aren't you looking at the amended complaint as the... You want it to go back to an original complaint? I'm trying to figure out if it's  trying to establish the scheme that has taken place. So children at Resurrection School have been under orders for the past two school years up until two weeks ago. So the first year it was MDHHS. They rescinded their order and then a couple weeks after the July panel hearing then MDHHS issued recommendations for the counties to issue their own orders and those county orders have all been in for the past year up until two weeks ago. Another point, Resurrection School never complied with any of the orders, did it? Isn't there evidence in the record that it did not? Resurrection School wore masks in the hallway. The affidavit is what occurred. Those are the facts for Resurrection School is that they did not comply with with the health orders. I'm wondering about the MDHHS website. I assume we can take judicial notice of what the guidance is on that website. Would you agree with that? Yes, your honor. So just to go back, it is on all the county websites. They have the same document and the counties say that it was the local health departments with the assistance of the Michigan Department of Health and Human Services put together this document that's called the effectiveness of face masks to prevent SARS-CoV-2 and that's referenced in all of the county orders? Particularly, I was just looking at the website from February 16 of this year and it says updated masking guidance for Michiganders and it says mask use during future phases. Recommendations regarding masking may change as conditions evolve. Such changes could include the presence of a new variant that increases the risk to the public or an increased number of does that not indicate that there is a risk of recurrence of masking guidance or requirements from the MDHHS which the county would have to implement through its regulations? Yes, your honor. Again, when they say that they rescinded the recommendation, they really didn't rescind the recommendation on February 16th. What they said is that this recommendation could be reinstated at any time that COVID is cyclical and they follow this. I'm struggling with that answer because we're here on a specific case and the specific case we're here on is about an order and the order has been rescinded and you might have another case that you want to bring later against some other entity or some other method but right now what's before this court is an order of that department that has been rescinded and the question before us is do you meet the standards for a release that is required to get the injunction that you want? Isn't that what's before us? Yes, your honor. So the injunction that we're seeking is twofold. First, it's to enjoin any reenactment of these same orders. Secondly, by the state and when the state acts in concert with these local health departments because they're really advising them and then the local health departments are following what MDHHS tells them to do because they have supervisory authority per the Michigan Health Code. They also handle the apportionments for all the local health departments so that's how the local health departments get their advice and it's how they get paid and it's how they avoid being reprimanded from the Michigan Health Code. You seem to be conflating advice, advisement or advisements, recommendations and then mandates and each one of those things is different and separate in the order. As Judge Gibbons and Judge Strange mentioned, we're here on a specific case to talk about orders. There could be recommendations, you know, the recommendation to wash your hands but that's not an order that a person does it and what we've got right now is a set of criteria that form the basis of the amended complaint and those conditions have now been abated, they've been rescinded. I know you argue that they're capable of reinstitution but you have not shown anything right now to my mind that shows that there's been any evidence that there would be to implement it. To answer your question, it does have to be to an absolutely clear standard and the burden is on the appellees but the second point that we're asking for, for injunctive relief, is injunctive relief from enforcement from the violation that occurred under the MDHHS order. So in Michigan there's a statute of limitation of six years for because of the admission and actually it's a little bit ominous that a appellee is now citing the hearing that happened against our case with Ingham County here before this court in the reply brief, I'm sorry, the supplemental response brief. He's citing that our clients admitted to the violation so that's very concerning. So you just did admit to the violation here didn't you? That you did not follow, that you did not require masks in the classroom? So there's two separate schools. FS goes to a Catholic school that was not specifically named in the complaints because of fear of retaliation and fear of being shut down by the Health Department. Resurrection School was brave enough to be named. Resurrection School had the principal Jacob Alstadt testify on their behalf in the lower court in the companion case to this case against the Ingham County order and when he testified, he testified truthfully, he testified consistently with what was in his affidavit and he did admit that Resurrection School did not require that their students wear masks inside the classroom. It's not clear to me what the answer was. So as I understand the original order, there was a mandate from the state. The state withdrew that order and now the state for a lengthy period of time has recommended it but has it required all of the local counties and all across Michigan to impose these mask mandates or has it just left it to each local county to decide on its own? So over the past year since August 16th, MDHHS has recommended and they've supported, they've helped craft the different county health department orders, they've provided studies that they worked on together. There are some. I'm struggling a little with why we just can't separate out the county case. It's really adding a complication. I'm just trying to understand the efficiencies and why you care other than the fact you've got the whole in-bank court here. That case is proceeding separately. We had a recent decision in that case. So I just, you know, to the extent someone's unhappy with a county order, I'm really struggling with why that's not the place to deal with it and the county orders have nothing to do with this case. They have to deal with a state mask mandate which was withdrawn nine months ago and the question is whether that's moved. It just goes to show the continuance with the requirement of universal masking without any sort of religious accommodation. Would you agree this case is moot? Let's just say there was no prospect whatsoever of any county masking orders that under Michigan law, hypothetically, counties could not have those kinds of orders. Is this case moot? No. MDHHS, at any time, they have the sole discretion to issue these orders. Where's a case where a state withdrew and it's been nine months and the court said it wasn't moot? They have not had to issue their order because they've used the county's Let's talk about mootness in general. Nine months is a pretty long time. That's what I'm struggling with. I realize mootness is not scientific. It's not math. There's a lot of judgment. I get it. But nine months strikes me as on the pretty far side and I'm giving you a chance to say, no, it's not on the far side. There are a bunch of these cases where it was longer than nine months. Nine months has been a very long time for Principal Jacob Alstadt who, at any moment, fears that there could be police officers coming to his door to come arrest him for misdemeanor offense. That way, the next 40 years are going to be miserable. But I think Judge Sutton's question is, can you give us a case that would say that this is not moot, that's a comparable case? Because when I've looked at the other circuits, I think the first, the fourth, the tenth, and a couple of others have said similar situations are moot. So I think this is very close to Tandon, actually, because Resurrection School, even though the timing is different, Resurrection School has remained under the threat. We're asking a timing question. You can't answer it by saying, well, let's put timing to the side and let me tell you something else. I wanted to ask, do governments continue to seek to enforce? Tandon is a different factual circumstance. Well, I can't say that I can tell you any sort of case where a person is directly under the enforcement mechanism and could be held liable for criminal charges at any time for the next four and a half years. Let's try again with one more case question and maybe you'll get it. So can you give us any case where either this court or the Supreme Court has found that a government providing guidance in the form of a non-binding recommendation, that that was sufficient to survive a mootness challenge? The Supreme Court or any case of this court where this non-binding recommendation could survive a mootness challenge? So I think we go to Rule 65 and what a preliminary injunction does and what it stops. So if you enjoin MDHHS from continuing to fund, support... Okay, so what's the name of the case where that Rule 65 interpretation relating to facts like this has been decided? Just give me the case that I can look at. I'm familiar with Rule 65 and the four prongs there, but I want you to give me the case that you say the Supreme Court or the circuit has provided such a ruling. So I think voluntary cessation cases. I think the capable of repetition yet evading review cases. The name of one. United States v. Grant. You get rebuttal, so this is a terrific way to start rebuttal. So that seems like a good idea for dealing with this line of questioning. But let's give Judge Cole and Judge Clay an opportunity if you have any questions at this point. Thank you, Chief. No questions at this time. No questions for me, Chief Judge Stott. Okay. Well, counsel, I think why don't we let you think about this issue and you'll get full rebuttal, if not more, and we'll hear from your co-counsel. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. John Bursch on behalf of Amicus Alliance Defending Freedom, Chief Judge Sutton, and may it please the Court. In response to all the questions, I want to press one point and then quickly move to the merits. I think Ms. Maracino is exactly right to focus on the criminal penalty here because, Chief Judge Sutton, we're not nine months out. We're still right in the soup. There's a six-month criminal tail on this order because of misdemeanor charges. Six months or six years? I'm sorry, six-year tail, and she gave you the statutory citation, so I won't give that again. Has the state said that they wouldn't prosecute? They have not disclaimed prosecution. In fact, in a case in the Michigan Supreme Court right now involving the aptly named Iron Pig Restaurant, Michigan Supreme Court case number 164039, they are asking the Michigan Supreme Court for a bypass application to reimpose a civil penalty on Iron Pig for failing to comply with a mask mandate. In addition, it's important that under Michigan's public health code, it's not simply the state that has the ability to enforce criminal penalties. The local prosecutor would have that ability. So would law enforcement officers, public health officials, and other public servants. Do people seek a permanent injunction? They do seek. I believe this is up on a preliminary injunction. My question is going to be could the preliminary injunction be moved but the case still be alive to resolve the permanent injunction? It's hard to imagine how the preliminary injunction could be moved but the permanent injunction could be live because the reality is that the principal and the priest at the school are facing the risk of ongoing law enforcement action by any of these a variety of factors. If there's no threat immediately, but there may be a long-term threat, would a permanent injunction be a way to deal with that? Yeah, I think there probably is a short-term threat because all it would take is an Ingham County police officer or the local prosecutor to say, even if the state disclaims that argument today that they won't prosecute, that a local police officer could walk in and say, I don't like what you did. You were in violation of the order. That's a misdemeanor. Isn't there a distinction between irreparable harm and whether it's moved? So perhaps that point might go to whether there's irreparable harm or not, but regardless of whether it's imminent or not, it's on the books that you could be prosecuted for over a six-year period for not complying. So that goes to mootness. Whether it is imminent or not goes to irreparable harm, which is a different issue. Right, Judge Bush. At a very minimum, the case would not be moot because we're still in the middle of an enforcement period. I'm embarrassed I don't know this, but just give me the case that treats the threat of criminal enforcement the way a money damages action keeps a case from being moot. We all know that if you sought money damages, that eliminates the mootness problem. Is there a Supreme Court case that just clarifies that as long as the statute of limitations is not run in criminal law enforcement, it's effectively a damages case? Yeah, I'd be happy to submit a 28-J letter on that. Mootness was not the focus of our briefing, obviously. Can I ask you then about Monclova? One of the things, I realize you have a client. I realize you got in bank review, so I get the dynamics. What I'm struggling with is if the case is moot, I'm really trying to understand why you and your co-counsel's clients, how badly they're hurt. Here's why I say this. If the case is moot, it means the district court decision in this case is vacated. Obviously, the panel decision is no longer there. You have Monclova on the books. Monclova is a very helpful case to your side of the case. I'm struggling with why that's a problem with that being the controlling authority, whether in the Enum County case or someone else. What is it missing? What's missing in Monclova that you want? Even among this en banc court, there are members who disagree very strongly about whether Monclova is the controlling authority. It's a published panel decision. End of story. Right, and then we had another panel decision in this very case that said it was not controlling. Not citable. Not citable. It's been vacated. Right, but the reasoning hasn't changed. What that opinion said was that Beshear is the controlling case, not Monclova, and that Monclova has to be ignored. That doesn't really resolve the problem. The reason that we're here is because it's not clear to the district court. Even in a mootness en court, we do have to say what the law is, particularly if there's a risk that the reimposition of the order would be affected by changing law. Why is there not enough in the course of that to say Monclova is good law? Well, if you're proposing that this court would enter or issue an opinion that says Monclova is good law, that this panel opinion can't come back, that to the extent Beshear suggests— You're getting greedy. You're getting greedy. All right, well, how about Monclova is good law, that this court should instruct lower courts to follow Monclova in tandem. That would go a long way towards solving the problem. How would that relate to mootness if we were to decide this is moot? How would we be going down that path? All right, so mootness isn't an inquiry where you decide what the merits opinion is first, and if you think that the appellants are going to win, then everything else that happened before is moot. The question on the table is, is Principal Alstott—could he be sent to jail because he violated an order and committed a misdemeanor? And the answer to that is going to be answered by your opinion, but until you decide it, it is certainly not a moot case. I'm struggling with why you think that this is imminent. If I'm correct, my memory is capable of repetition, yet evading review is that it's your burden, and your burden is to show why the extraordinary remedy of a preliminary injunction is available to you on these facts. And the facts are that it has been—this order, the only order at issue in this case, has been withdrawn since June of 21. The vaccines that were the key issue in young school children are now available ages 5 and older. The entity that issued this order has gone through the highly deadly Delta variant and the highly transmissible Omicron variant and has never reissued this order. I'm not sold by the argument that simply because an entity has the power to reissue an order, that that alone justifies a preliminary injunction. I don't think there's law that says that, because if that were the case, every time a government official has the power to do something, it could be enjoinable. But Judge Stranch, we're not even too capable of repetition, yet evading review, because there is active criminal liability, like I said, a six-year tail on this order. So it's as though the effects of the order are still present right now. So we don't need to get into that inquiry. You don't even need to consider— If the cases moot, do we need to question whether or not there could be criminal sanctions? Because if the cases moot, we simply say, we dismiss for lack of jurisdiction and we can vacate the district court's order. And so then there would have to be a criminal prosecution and then you could raise your claims in the criminal prosecution or whoever was prosecuted. The fact that there could be a criminal prosecution for the next nearly five years, maybe five years plus, demonstrates why it's not moot right now. It's a reasonable expectation question. Respectfully, I think the reasonable expectation might go to irreparable harm, but as to whether the case is moot, whether there's no Article III jurisdiction, where there's a criminal conviction hanging over his head, I don't think so. Suppose that the state promised not to prosecute the principal. Would that satisfy you? It would not because the county prosecutor, the local public health official, police officers, and any other law enforcement officers all have statutory authority under Michigan law to pursue this misdemeanor. So they can disclaim it today and the Ingham County prosecutor tomorrow could still initiate an investigation. Why wouldn't we just wait for that case? If that happens, then it comes back to life. Because you have a case in controversy now. I know you were hoping to talk about the merits, but you don't really have a case that you can point to and say, this kind of criminal tale keeps the case alive. Nobody has that case. At least you'd have to go check on that. I would have to look. I would not be surprised that I would be able to find one. If they had the basis of your argument, you would come prepared. Judge Stranch, my argument was the merits. As an amicus, we did not weigh in on the mootness question. I was merely responding to the bench's questions directed to Ms. For a penny and for a pound, Judge White. Are you saying that if this had been passed and then rescinded 30 days later, and during those 30 days you did exactly what you did, that you could then seek a declaratory judgment on the basis that you might be prosecuted? If there's a six-year limitations period. Now, let's draw a comparison, and maybe then I can just, Chief Judge, one minute on the merits. In the companion case that Judge Maloney just issued the opinion where you got the 28-J letter, he concluded that there was no irreparable harm because there only a civil penalty was at issue. The only enforcing party was the county health department, and they disclaimed enforcement. So all facts which are not present here. But yet he concluded that he had Article III jurisdiction to decide the case, that it was not moot. And that conclusion is much stronger here where you've got the ability to throw the principal in jail. If I could indulge the court just for... Can I ask one question before I indulge it? Yes. So if it was five years out, would it still not be moot under your theory? Until the limitations period is expired, I don't think it would be moot. But it's possible that there would be no irreparable harm at that point because you couldn't show a likelihood of prosecution such that an injunction would be appropriate. It becomes moot in year six when the statute of limitations period... Correct. And now this sort of damocles has been removed. Yes. Very briefly on comparability. Tandon says that comparability is concerned with the risk that various activities pose, not the reasons why people gather. And the risk of COVID transmission when six people are sitting around a table. Monclova says the exact same thing. How can I prove on Monclova? What's Monclova missing? Monclova says all that. You use the restaurants, you use the strip clubs, you apply strict scrutiny. You don't even need five seconds. But the mask ordinance applies to all gatherings. Yes, but it has an exception in restaurants when people are eating. When people are eating. So in order to eat, you cannot have a mask there. Correct. So you're saying that you have to have a rule that would prohibit eating in restaurants, along with this masking rule, in order to allow for children to be masked in the schools. Is that right? I'm not saying that you have to have any particular rule, but we're not comparing activities. We're comparing risks. And if there's a risk of people being unmasked at a table in a restaurant for a couple of hours, that risk is certainly comparable to the risk of four children in a pod at a school. In the same way that this applies to strip clubs. One could question that, because the four children at school are there for seven hours a day, day in, day out, whereas the people in the restaurant, who are eating at a table, are choosing to go eat with their friend or family, and they're eating only for one hour or so. And the non-mask there is directed to the impossibility of wearing a mask. And when you look at all of the things in the face mask requirements of the MDHSS, they are all related to things where you can't be wearing a mask, like swimming. Or, and I know your side has pointed out, what about the public safety officials? But the briefing misled the court, because the actual rule said if you're engaged in a public safety role and where wearing a mask would seriously interfere in the performance of the public safety responsibility. So if someone is a police officer giving mouth-to-mouth resuscitation, of course they wouldn't be wearing a mask. But if they're just sort of chatting with the public, then they would wear a mask. So where in the face mask requirements is there really this impermissible action that you're talking about? Two responses to that, Judge Moore. And I'm going to distinguish swimming, which I don't think is necessarily comparable, and focus on the restaurants and the strip clubs. First, there's nothing in the order that limits the time that you spend unmasked at a table with five other people in a restaurant to an hour or less. Where is the strip club part of this? The strip club would be a defined entertainment venue in Subsection 3. And at any entertainment venue where you have food or drink at a table, you can go maskless. So if someone went to a strip club with five other people and they were sitting at a table, as long as they had drinks in front of them, they could go maskless the entire time that they were there. And, again, on the restaurant point, the question isn't the practicability or impracticability of being able to eat or drink with a mask on. The question is whether having your mask off for an undefined amount of time at a restaurant in a small group at a table has a comparable risk of spreading COVID, as does children at a table. I'm unclear from reading the hand in. I guess two points. One, is this a comparability of risk? Is it a fact question? Are district courts going to make findings? Or is it a legal question? Are we just judging ourselves? And then the second point I guess I have is what we're really engaged in here is whether treating people the same or treating them differently, the state has a sufficient justification. So it reminds me a lot of equal protection analysis and their standards of review. Like strict scrutiny, you have to show that there's a really compelling reason for treating folks differently. Rational basis review, any old reason would suffice. The court hasn't used strict scrutiny analysis or rational basis, or at least the phrasing, in describing the comparability. Whose burden is it to show two things are the same versus different? Strict scrutiny would be a government, rational basis would be a challenger. What type of evidence do you have to present? Who bears the burden of proof? Have you thought through these questions? I have. And actually, I think Hannon and Fulton together answered both of those questions. They don't do it explicitly though, right? No, you have to read it carefully, admittedly, Judge Murphy. More carefully than Judge Murphy's. Not at all. With respect to whether it's a legal or a factual question, the court in Hannon treated it as a legal question. It decided comparability of the three families gathered in the homes with entertainment venues and retail stores and things like that without requiring an evidentiary record, without requiring findings of fact, and without deferring to the district court. I don't think so because the state strongly contested, as the state does here, that those were comparable venues, and yet the court decided as a matter of law that they were comparable. With respect to the second piece, Hannon and Fulton, while they don't say strict scrutiny, place the burden of proof on the government to have both a compelling interest and narrowly tailored means that achieve that interest. And so that's strict scrutiny in my book. That's even a higher standard than the exacting. They do, and narrow tailoring. I think that's a higher standard even than the exacting scrutiny that the court majority articulated in the AFPS case just last term. So I believe it would be strict scrutiny with the burden of proof on the government, which makes sense in a context where you're talking about religious rights being violated, religious exercise. We would have a tough time under rational basis, but even there I would say it's difficult to say that it's rational for the government to say that when reading from the Bible or doing one-on-one reconciliation that that is less important when it comes to spreading COVID than going to a strip club. There's a certain level of rationality where even a government regulation could fall below that, and this one would be right at that line. Thank you very much for your argument and for your questions. You have one more question. Go ahead. Does the fact that at the time this was initially promulgated that children couldn't be vaccinated, does that have any factor in terms of risk when you're comparing or evaluating what's a comparable risk? I think she's asking a changed circumstances question maybe. Yes. I'm just trying to decide the best way to respond to that. I'm asking, yes, it's relevant to change circumstances, but also when deciding what's comparable and you're assessing the risk, can you factor in that in the restaurant it's mostly adults who could be vaccinated and in the classroom it was children who could not have been vaccinated at the time? You could factor something like that in hypothetically, Judge White, but the problem here is that, one, children go to restaurants, too. This would apply equally to Chuck E. Cheese as it would to a fine dining establishment. And, two, the risk here is spreading COVID generally, and if we've learned anything from the last variance, it's that when adults are vaccinated, they can still spread COVID. So in this particular instance, the availability or not of vaccines doesn't change the comparability of the risk of those two different activities. Mr. Bursch, we have a conflict within our court as to the standard, what the comparable standard should be here, and as to the standard of review, strict scrutiny or a rational basis. And although this case concerns masking for religious schools, if some of my colleagues were to find it moot, how would this impact on other religious freedom cases and what problems would we likely encounter in this court on other religious freedom cases? Well, then the problem is that, although vacated, the reasoning of the panel opinion is still out there for government officials and for… The Monclova was published and the other decision is unpublished. Am I right about that? I'm right. You're right about that, Chief Judge. But the panel opinion in this case, nonetheless, picked Beshear over Monclova. Those are principal judges, and they called it like they saw it, and they saw it differently. They saw Beshear greater than, not equal to, Monclova. Why doesn't Tandon trump everything here? I mean, like Tandon almost verbatim says exactly what Monclova says. Can you answer my question first before I answer my colleague? Yes. And so the problem, even with a relatively clear Supreme Court opinion on the books, which was available to the panel at any point in this process, if you have the possibility that they go the other way, then you have government officials who can step on the toes of religious exercise. And although eventually that case may make it back to this court and you can straighten out the circuit precedent, in the meantime, religious liberty is going to be infringed. I mean, that's the natural result of having uncertainty in the law and an opinion that applies a comparator analysis that is more favorable to the government than the Constitution suggests it should be. But if this case is moot, then all of that would be an advisory opinion that this court should not give, regardless of one's views of the merits. If the case is moot, we don't decide the merits. Correct, but the case is not moot because... I understand that's your point. Yes. But to respond, that it would be nice perhaps for some people to think that it would be great to have a 16 or 17 judge decision, but if the case is moot, then you have to wait for another case to come to get 16 or 17 judges involved. Let me amend my response there, Judge Moore. Stick with the answer that, yes, this case is not moot. But even if it's moot under traditional criteria, let's say, but we'll assume that premise, you've still got the voluntary cessation and the capable of repetition yet abating review that allows this court to settle circuit law, notwithstanding the fact that the case is moot. And I can't imagine a situation where that's more appropriate, where rather than disclaiming any ability to input or to put masking requirements back on the public, in the very order that rescinds this one, they say at this time, where in the latest budget cycle, the governor resisted the legislature's request that she agree to a no more masking mandate and where her representatives in the Michigan Supreme Court are seeking to impose civil liability on the iron pig for a mask mandate violation that happened a long time ago. These are precisely the types of situations. In an emergency process where it's difficult to get a case from filing to this court on bond before that order expires, that those types of doctrines would allow this court to reach the merits. All right. Thank you, Mr. Birch. We appreciate your argument. We'll hear from the state. Thank you. Good afternoon. Good afternoon, Your Honors. Assistant Attorney General Daniel Ping arguing on behalf of all defendants today. This case is moot and it has been for a very long time. The voluntary cessation exception to the mootness doctrine doesn't require defendants to disprove that something unknowable in the future will never happen again. Counsel, did the MDHHS eliminate the mask mandate because it agreed? Was it conceding the point of the plaintiffs here that this was a religious violation? Was that the reason why they ended the mask mandate? I don't think so, Your Honor, because the HHS rescinded the entire order at once, which I think is proof positive. So you're not here today to concede the other side is correct on the law as far as Monclova being the law of the Sixth Circuit? No, Your Honor. I mean, I think to the extent that Monclova is still on the books, it is. I think it was wrongly decided. Counsel, you say it's moot because the state has engaged in voluntary cessation of the rule. The U.S. Supreme Court, United States v. Concentrated Phosphate, says, quote, a case might become moot if subsequent events make it absolutely clear that the alleged wrongful behavior will not reasonably be expected to reoccur. Now, what evidence do you have that it's absolutely clear that the state will not reenact this unconstitutional mask mandate against the religious school? Well, Your Honor, the full sentence there tells a bit more of the story. It's absolutely clear that it's not reasonably expected to reoccur. So that's kind of like saying definitely, probably. The probably is doing most of the work there. Did the health department in their February 16, 2022 statement of independence state recommendations regarding masks may change as conditions evolve? I mean, doesn't that leave it open and make it not absolutely clear that these conditions, that the restrictions may not be reimposed? Well, that was the county, Your Honor, and that order, as it's been covered, that's proceeding along a separate track on the same lower court docket number. So if you recognize... That's on the MDHHS website. Sorry, I'm not trying to see you. Isn't that the Michigan... That's February 16, just a few days ago. That was on the website, MDHHS. That was in the context of revoking even the non-binding recommendations. And there you acknowledge that if conditions change, we may act. So how is it absolutely clear that this will not be reimposed? Counsel, are you willing to commit today that the state won't enforce its prior, won't reenact its prior rule? Absolutely not. But that's not the... I think that's the end of mootness right there. It really isn't, Your Honor. Respectfully, what we go back to with the mootness inquiry is Article III. Is there a case or controversy? And this voluntary cessation doctrine kind of arose in the context of things like Speech First, where you have a policy decision that was made kind of in a vacuum. And when you have that policy decision getting revoked upon the filing of a lawsuit, it raises an eyebrow, right? What changed? Nothing changed except for the filing of this lawsuit. Here we have a case where, you know, I don't think there's any legitimate argument that the Department of Health and Human Services rescinded its order to gain some sort of advantage in this lawsuit. And the hallmark of the inquiry is good faith. Because if you've rescinded in bad faith, there is still a case and controversy, but one of the parties has hidden it from the court. Did the district court make a ruling on this in its recent decision? It did, but I don't believe it applied the correct framework. In fact, it didn't really apply any framework whatsoever. But then it did find that there was no likelihood of irreparable harm for essentially the same basic reason. Did it go into mootness at all? It did make a conclusion that the matter was not moot. Counsel, how do you respond to the criminal penalties argument that your opposing counsel raised? Well, I think the court should, you know, to the extent it wasn't going to do so already, borrow from the pre-enforcement standing context. You know, ultimately, the lens is reasonable expectation of... You at least concede that you won't enforce the misdemeanor against the school for the next six years? You know, well, I'm... Do you have the authority to make that representation? No, I don't have that authority right now. Well, I'm on behalf of the state. I think the counsels of the state can enforce it, so on behalf of the state. And I understand, I was a government lawyer, so I understand your position, but you won't even commit the government's not enforced the misdemeanor for the prior activity over the next six years? I haven't had that conversation. I'm happy to send... So it is possible? At this moment in time, as far as I know, yes, but... And it is possible that DHHS can reissue the order on a moment's notice, correct? Certainly it's possible, but... They can do it, right? They can do it without the legislature, on their own, without any other approval. That's true, but the universe of circumstances show quite plainly that the revocation was done in good faith. So what they did, when they revoked it, they also issued this that I'm looking at, right, that says everyone should keep wearing masks, even regardless of vaccination status. I'm quoting. Correct? Yeah. So to the earlier questions about whether it's relevant that young people can get vaccines, Michigan doesn't think so. Well, that was a non-binding recommendation. No, I understand. Okay. But your recommendation is regardless of vaccines, you wear a mask, just so I understand. That was true at one point. So, counsel, and this may be outside of the record, but is there anything that says that people who get vaccines can't still get COVID or spread COVID? In terms of the scientific source, Your Honor? Yes. No, I'm not aware of anything like that, but... So you had the non-binding recommendation for a while, and that has been rescinded now? That's right, that's the schools. What is the director's current position? You know, that's a publicly available document. I can't recite it verbatim, but I believe so. I mean, if you look at the last order in time, that was dated May 24th, 2021. All vaccinated persons were exempted from the mask mandate. So, you know, if history is any guide, and it should be under the reasonable expectation framework, you know, that was essentially the schools were sort of the last holdout because of that vaccination eligibility issue, and that eligibility has continued to expand and will continue to do so. Counselor, I'm interested, Mr. Bursch and the district court in the county case seem to think that there's a space between mootness and irreparable harm, and I'm wondering what your position is on that. So, Mr. Bursch suggests that this case might not be moot, but nonetheless, there might not be sufficient eminence for irreparable harm. And that's how the district court resolved the county case below. What is your position on that? Is there space, and what does that space look like? Well, you know, I think it's a question of burden. You know, for mootness, it is our burden, at least on the voluntary cessation prong, whereas, you know, on the PI matter, it is the plaintiff's burden. So that might be the source of the space there. That's the only way I can reconcile those two rulings. Okay. What's the difference between voluntary cessation and capable repetition? I mean, I know laid law kind of creates this new test, and I suppose, you know, we have to treat it as a different test as we have, and I'm sure will, but I don't know. I feel like they're getting at the same point, and, you know, I dislike it when we complicate things. I really feel like they're just getting at the same thing. Well, I think they're mutually exclusive. I think that the voluntary cessation exception arose to cover that circumstance where, you know, one of the parties took some action to sort of hide the ball, hide the controversy from the court, and that doesn't cover those cases where the controversy comes and goes irrespective of any sort of – the government withdraws it and then reinstates it. I mean, it's a pretty similar situation. That's what I'm struggling with. Well, that might have informed, you know, the Supreme Court's decision to look at that, you know, moving the goal posts in Cuomo and Tandon, but in this case, you know, I want to say it was eight months and the plaintiffs had multiple opportunities to expedite the litigation, and they left those on the table every single time. You've got cases getting before the Supreme Court in 14 days or less. This case took its, you know, its sweet time making its way up the ladder here, so this was not evading review had plaintiffs pursued all of their options in that regard. So MDHS did not reimpose the mask mandate either during Delta or Omicron, correct? That's right. Has DHSS in the briefing indicated that it is unlikely to reimpose a mask mandate on the schools? Yes, we did suggest that in the briefing, but, you know, there's only so much you can do, and, you know, we're here to understand the confines of the department's authority. Are you walking back the unlikely statement now? I mean, you told me you won't, I understand you said you won't commit to not reinstating it. Are you walking back the unlikely statement now too? No, I'm not. It sounds like, it just sounded like maybe you were. It was in your brief. I'm sorry. Go ahead. No, I'm just careful to equivocate, you know, on behalf of the decision makers. If we rule in favor of your opponent here and it goes back down, what will the district court do if you lose here? On mootness, Your Honor? Well, I mean, that raises a great question, because to Judge Murphy's point, I think this is a fact question. The district court's already made some findings in this case, right? Yes and no, Your Honor. I mean, the district court very clearly indicated that it agreed with the defendant's view of what constitutes a comparable secular activity, but it felt that it was bound by Monclova, it knew it was bound by Monclova, so it couldn't compare the risk vectors that are present in a school in every case to other activities presenting those same risk factors. So it struck a middle ground, but it was kind of a tortured analysis, and I think if this court does reject the defense mootness argument, this is a great opportunity to recognize that Monclova, while it contained a very important discussion of whether the court should look beyond four corners of a restriction that happens to be cabined within one order, its evaluation of risk was essentially nonexistent. How hard was it to say that the Hollywood Casino with 2,500 people in that building presented a risk comparable to the kids going to school? At least comparable. I mean, Judge Murphy made the point that sometimes a fact question can be like a Rule 56 question. That's decided by Rule 56. I mean, is that something that you think needed more analysis to explain why 2,500 people in the Hollywood Casino would present a risk of infection to the people who were there? Yeah, I think it did. Really? Yeah. Especially, I mean, it needed some discussion because it essentially plugged in the conclusion of Roman Catholic, which had to do with houses of worship that were closed while office buildings, typical office environments, were left open. As your friend pointed out on the other side, Tandon did the very same thing in evaluating risks across different things. In fact, you in your brief talked about activities, but Tandon pretty clearly focused on risks. And so what do we do? We remanded the district court. So let me just envision the opinion. The opinion says Markova's right, Tandon's right. We remanded the district court. They have to evaluate the risk across these things, take facts, make factual findings, and then it comes back. Well, I think a remand is not necessary, but a remand should recognize that Cuomo and Tandon were absolutely consistent and correctly decided rational good cases that make sense. Monclova should be vacated. But didn't Tandon follow Monclova? I mean, what am I missing here? Because maybe it's me, but I thought, like Judge Kepledge mentioned, that Tandon basically adopted the Monclova test. Well, what you have in Cuomo and Tandon is you either had an evidentiary hearing below or you had crucial fatal concessions by the state that are not present in this case. You had the state admitting that it was regulating more strictly entities. Let me ask this. Maybe I'll go back to the question that was asked. I understand your point. Why couldn't I, and maybe you can say this isn't your job, why can't I tell that having a mask off at a restaurant poses the same risk of getting COVID as having a mask off in a classroom? Well, one thing that we've been stressing that the plaintiffs have been completely silent about is the fact that, you know, a school is an all-day, everyday activity where the kids go home at the end of the day. Okay, so maybe this is the answer. But we also know kids are at much lower risk now, right, than adults. Not transmission vectors. But kid versus kid, but the point being is if you look at that, we can look at it. I mean, just like we're having this discussion. Why can't we just look at it like Judge Kepledge said and say Hollywood Casino is just as big a risk as school? Well, I think we need to step back for a second and remember that we're here on a PI appeal. The burden is with the plaintiffs. And although I don't think it is the state's burden at all to have to respond in that regard, you know, we have put forth a common sense, plain language rebuttal that says, you know, indoors, and that is something that is not true of these other activities. Is Mr. Birch right about the strip club? He's right about the eating and drinking exemption. But, you know, the Supreme Court's been clear that we don't look to the reasons behind people's conduct. On the strip club, Mr. Birch referred to point three of the order, which is gathering restrictions for particular types of facilities. But the eating restriction would apply in the strip club, just as the eating restriction allowance applies in the school, right? So in the strip club, there has to be masks except when you're eating. In the schools, there have to be masks except when you're eating. Is that correct? That's right. The reason behind the activity has nothing to do with it and shouldn't have anything to do with it. It's very different than the cases that were the exemplary cases where a state like California allowed people to go to strip clubs but didn't allow them to go to religious functions in a home. Here, the mask ordinance applies even-handedly and says when you're eating, you don't have to wear a mask. The gatherings restriction on masks says the gatherings mask requirement does not apply to individuals who are eating or drinking. So while you're eating or drinking, you cannot wear a mask physically. So it would be crazy to have a rule requiring masks at all times when you can't eat or drink with a mask, right? That's right, Your Honor. Although I do want to kind of clarify something. Hey, can I ask a quick question before we get off that point? Do you mind? Well, maybe let him answer the question first. Okay, I'm sorry. I just wanted to continue on the point. I'm sorry. Go ahead. Who am I responding to? Go with Judge Murphy. Go with Judge Murphy. We'll get back to the other line of questioning. Go ahead. The other side suggested that you have the burden of proof on comparing the two entities and proving that they're not similarly situated. Do you agree with that, or do you think that they share the burden? And where do you get that from? Well, all of the case law in this area is pretty clear that the burden doesn't shift to the defense unless and until comparable secular activities are identified that are being treated differently from what plaintiffs propose. So until that happens, PI law applies. You know, the burden rests squarely on the plaintiffs to make all of the showings necessary until that point. All right. Sorry about all that. With regard to the eating and drinking, I guess first just a kind of foundational question. Is it your understanding that a person, say, in a strip club, or, you know, to be less provocative, let's say they're in just a regular bar and they have a beer in front of them. Are they permitted to be unmasked the entire time that beer is in front of them? You know, I don't think so, but it doesn't matter. I mean, does it specify? No, it doesn't specify. I mean, like, there are many institutions now that say you have to do, like, this quick sip, or even on Delta Airlines, you know, they say it's only when actually consuming that you can lower the mask and then you put it back up. And so if the exception we're talking about doesn't have that kind of specificity, doesn't it open itself to an argument that it exceeds this idea of necessary, you know, removal of the mask and is gratuitously allowing people to have their masks off? Gratuity of the activity doesn't really have anything to do with the risk inquiry. I thought you were making an argument that it's necessary that the mask be off for these activities that are in the exception. So that's fair, because in our opening briefing we did lean in part on this idea of incompatibility. Right, it's the same thing. Yeah, I agree. It's incompatible with plaintiff's operations, too. So, but that's, you know, the Supreme Court's been clear in tandem that that kind of thing is not relevant. So, you know, I'm happy to walk away with some argument that physical incompatibility, you know, provides a justification. What is the risk? The risks, to Judge Teplidge's point, the risks are if you're at a bar and it doesn't require you to put it up between sips, you can be there for as long as someone can be in a school, right? You go at 7, you leave at 2 or 3, you're there. Why isn't the risk? No judges. No judges. It's like an airport card. Why isn't the risk the same? Because, you know, schools present a risk profile that is simply orders of magnitude greater than somebody who goes to Than a bar? Yes, Your Honor. Because let's think about what plaintiffs are asking for. You know, one of the principles from Roberts v. Neist that's been adopted by the Supreme Court is that, you know, plaintiffs in these positions, they just want to be treated equally. They want to be given the accommodations that are given to other people who are engaging in activities that present similar risk profile. Students are, they're there every single day. They do not have a choice. They necessarily live with other people. And I think what's being lost here is this idea of, you know, we're looking at risk in terms of, you know, two people who pass each other and we're just kind of looking at these little 15-minute blocks. But, you know, these kids are going, all 20 of them, in each room, entire buildings, multiple schools throughout the state of Michigan, they're doing this every single day. And they're going home, they're interfacing with people in their families, they necessarily have guardians, right? And then they're going back and they're doing it all again the next day. There's just nothing like that in the list of exceptions to the order. There's background testing and medical information that supports the distinction between the transmission coming from schools, particularly elementary school, and carrying those to families and homes, that is distinct from any medical information regarding these other entities. Is that not correct? If I understand you correctly, it is. I mean, the Department of Health and Human Services identified schools as the leading source of outbreaks at various points during the pandemic. I was just wondering, I wanted to kind of get us away from this secular versus religious distinction that we seem to be making, and eating versus not eating. Because I'm wondering whether the state is actually discriminating between types of religious activities. So, you have an exception for engaging in a religious service, which I assume means that you can pack your megachurch on every day of the week, because you can't stay only Sunday, and you can sing, which is very dangerous. But you can't have religious instruction in a small group in these little pods. And I'm just wondering if you have data on risk transmission rates there, and how you justify the state saying one kind of religious practice is okay and another isn't. It's different than the strip club analogy we've been focused on. It is. Thank you. I think it comes back to the core inquiry is whether this is generally applicable. The state can make all these policy judgments it wants, so long as it's complying with the core mandate that the plaintiffs are treated the same as others. And in this case, the plaintiffs are receiving the benefit of that particular exemption. Well, they're getting a religious service exemption, but you define a religious service not to include religious instruction, I assume. So, can you have Sunday school? Is Sunday school okay? So, like, you know, you go to church, and then afterwards you send your kids to Sunday school. It's almost like the state is making a determination that some religion is more important than other types of religion. So, it's a different type of discrimination we're talking about here. Well, I think the state doesn't see it as discrimination against religious worship. We're determining what, in the hierarchy of a religion, what's more important, and essentially the state is saying it's more important to go to church without a mask than it is to receive religious education without a mask. You know, I think that, you know, the state can grant these kinds of exemptions. I'm having trouble thinking about it because it hasn't been argued yet. Is this part of the plaintiff's argument? The discrimination is between the allowance of a large church service but not day-to-day schooling? You know, I don't recall seeing it, but I'm not going to make any promises in that regard, Your Honor. Well, try to answer it. I mean, then answer it. You haven't yet. Yeah, I mean, the lodestar is equal treatment with respect to an activity that the plaintiff wants to engage in. So, that's the starting point for the analysis is what plaintiffs have requested in their preliminary injunction, which is all day, every day instruction in circumstances that would resemble a Sunday school or something like that, but every day. So, really, those are in different risk trenches, if you will. So, I think it's perfectly consistent that that's deemed a lower risk activity because I guess I could be wrong about this, but nobody's at a worship service the same amount of time that kids are forced to be at school. And does the regulation define what it means by a religious service? I don't see it in the regulation. No, it does not. I don't see a teacher teaching about the Bible, for instance, that could constitute a religious service, right? Well, we'd stroke for plain language readability, and I think it does say worship in fairness. I read it as saying are engaging in a religious service. But plainly, you know, plaintiffs didn't think that it covered their operations. Well, that's not the way the state has it. I mean, the state hasn't recognized that there's an exemption for the school based upon this religious service exemption, right? Well, there are schools that have religious services as part of the day, and presumably, at those services, they'd be exempt? That's correct, Your Honor. But really, I mean, plaintiffs are the masters of the complaint. They came to the court and said, you know, we don't view this as a religious service. Let's see if Judge Cole or Judge Clay has any questions. No questions, thank you. No questions. One more question, and then we're going to go to rebuttal. Yeah, I'm just a little confused on your position on what's a fact question. I mean, we're making assumptions about risk, and although it's not in front of us, I mean, we see that in the companion case, there was a determination that it's after 15 minutes. So to what extent is it a factual question what the risks are for a child to be with the same group of children all day long as compared to being in a restaurant or a bar for a half an hour? I mean, it would seem to me that there would be something scientific, I mean, you know, the answer to that. And then do we have a hearing, or is it a question of law as argued? It is 100% a question of fact, and the reason that other courts were able to reach these issues were because of these concessions made by the state that they were regulating more risky activities less strictly. I don't think that you need an evidentiary hearing in this case, mostly because it's moot, but also because, you know, I'm sorry, are you having trouble hearing me? I don't think we need an evidentiary hearing in this case because I think it's so clear that there's nothing akin to this all-day, every-day instruction where the room full of kids has their mask off. There's nothing like that that's accepted in the order. But in all those cases where the court seemed like maybe it was just speaking from, you know, shooting from the hip, there actually either was something in the record or there was a concession by the state. Thank you, Mr. Ping. Thank you. If there's nothing else, I'd ask this court to dismiss the appeal as moot or any alternative from the district court. Thank you. Thank you, Your Honors. To reach the issue of mootness, the panel issue on mootness was correct. The district court opinion that was filed yesterday, R-77, was correct on mootness. Refused, the AG's office here on the state has refused to disclaim additional mask mandates in the future. They refused to disclaim any enforcement. That makes this case different. Going to the time question, speech first versus Schlessel, which is quoted in the brief, the speech restriction in that case was rescinded after the complaint was filed, so presumably there were several months, perhaps years, until the court decided that case. Looking at Ohio versus EPA, which was penned by Judge Kaplich, in that case, the defendant actually disavowed enforcement, so the court found that the PI was moot but found that the overall case was not moot due to the threat of enforcement that the statute of limitations had not run. What relief are you seeking here if we rule in your favor and send it back down to the district court? We're seeking an injunction of enforcement and we're seeking an injunction of these orders in the future that fail to have any sort of religious accommodation. Well, this is just on a preliminary injunction now, right? Yes, Your Honor, and our clients are facing the irreparable harm of enforcement at any moment during the pendency of litigation. Certainly under Allot versus Burns, it's only the threat, and here with these very important First Amendment constitutional rights at issue, there's unquestionably irreparable harm here. There's certainly a threat of irreparable harm, especially when the state is going after its pound of flesh in the Iron Pig case in front of the Michigan Supreme Court. Actual issue or legal issue for the district court? In terms of irreparable harm, Your Honor, I believe that it's a legal issue. We're asking for this to be enjoined at the earliest possible time during the pendency of litigation. Under Tandon? Your time is up, but if you've got one more point, go ahead. Thank you, Your Honor. Under Tandon, I just want to talk about comparators very briefly. A household under the Order 1A talks about the definition of household. It can be up to 19 unrelated individuals together in one house. So certainly if you're talking about days on end being together, imagine that person is a basketball player. They go and they're part of the testing exemption to this order. They go and play high-risk basketball without a mask. They come home to the house of 19 people and are unmasked and can do whatever they want. It could be college students in a frat house. Certainly I think this court would believe that a frat house is going to pose much more of a danger than resurrection school where they have pods, they have strict screening protocol, they have safety precautions. I just want to direct the court one last thing to the R77 page ID 1515 where the district court held that all of the safety precautions that resurrection puts into place now are just as or perhaps more effective to prevent the transmissibility of COVID-19 than masks. Thank you very much, Your Honors. All right, thanks to all three of you for your helpful briefs and arguments. We really appreciate it. The case will be submitted.